IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| TAYLOR P., by and through her parents, CHRIS P. and CARRIE C., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 06-4254-CV-C-NKL ) ) |
| MISSOURI DEPARTMENT OF ELEMENTARY AND SECONDARY EDUCATION and POPLAR BLUFF R-I SCHOOL DISTRICT, | ) ) ) ) ) |
| Defendants. | ) ) |
| POPLAR BLUFF R-I SCHOOL DISTRICT, | ) ) |
| Counterclaim Plaintiff, | ) ) |
| v. | ) ) |
| CHRIS P., CARRIE C., NEAL TAKIFF, and JENNIFER HANSEN, | ) ) ) |
| Counterclaim Defendants, | ) ) |

ORDER

Plaintiffs Chris P. and Carrie C. ("the Parents") bring this action on behalf of their daughter, Taylor P., under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1401 et seq., to challenge the result of a due process hearing held January 23-27 and March 27-29, 2006. The Poplar Bluff R-I School District ("the District") has counterclaimed for prevailing party attorney's fees against the Parents and their former

1

attorneys under 20 U.S.C. § 1415(i)(3)(B)(i)(II)-(III).  Pending before the Court are the Parents' Motion to Dismiss the Counterclaim [Doc. # 8] and the District's Motion to Join Plaintiffs' former lawyers, Neal Takiff and Jennifer Hansen, as Counterclaim Defendants under Federal Rules of Civil Procedure 13(h), 19 and 20.  [Doc. # 16].  For the reasons set forth below, the Motion to Dismiss is denied and the Motion to Join is granted.

I.      **Factual Background**

For the purposes of the Parents' Motion to Dismiss, the Court accepts as true the following facts alleged in the District's Counterclaim.   Due to chronic ear infections when she was two years old, Taylor had tubes surgically inserted into her ears in December 2001.  A month earlier, her hearing had been formally assessed at Audiology Associates of Cape Girardeau, Missouri, but the results were deemed invalid.  After the tubes were inserted, her hearing was assessed again in January 2002 and determined to be within normal limits bilaterally.  Taylor's parents also had her speech and language assessed by Judith Seawel.  There was no concern regarding Taylor's hearing acuity at that time and Seawel recommended direct speech therapy.  Taylor attended four speech therapy sessions with Seawel from February through April 2002 but those services were discontinued due to "time constraints."

In October 2002, Taylor's parents had her speech and language evaluated at Saint Louis University due to their concerns about her late speech onset, her indistinct speech and her use of only 2-3 word sentences. The evaluator recommended speech and language therapy as soon as possible.  A few days later, Taylor's parents informed Berla Bieller of

the Poplar Bluff R-I School District ("the District") where they lived that Taylor had a speech delay, but mentioned no other developmental concerns. On October 22, 2002, the District conducted a hearing test which Taylor failed. Her father was given a copy of the procedural safeguards available under the IDEA at that time. Despite the failed hearing test, the District received a note from Taylor's pediatrician on October 31, 2002, stating that her hearing was within normal limits.

On November 15, 2002, a District multidisciplinary team developed an evaluation plan designed to assess whether Taylor was initially eligible under the IDEA. Because Taylor's pediatrician had informed the District that there were no concerns with her hearing, the team did not evaluate in that area. On November 18, 2002, the District provided Taylor's parents with an additional copy of the IDEA procedural safeguards. Taylor's multidisciplinary team convened again on January 10, 2003, to consider the results of her initial evaluation and to determine her eligibility under IDEA. At the conclusion of the meeting, Taylor's team concluded that she qualified for IDEA services under the category of Young Child with a Developmental Delay. At that time, the team identified delays in the areas of communication, including speech and language, but not hearing. The multidisciplinary team developed an initial Individualized Educational Program ("IEP") for Taylor. Her father attended and participated in the meeting and was satisfied with the IEP. He provided written consent for Taylor's initial placement in special education.

In January 2003, Taylor began receiving early childhood special education

services from the District and continued to receive those services through July 2004. During the period in which she was enrolled in and receiving services from the District, Taylor was not diagnosed as a child with a hearing impairment and her IEP did not address her as a child with a hearing impairment. In April 2003, Taylor's parents had her hearing evaluated again at Audiology Associates in Cape Girardeau, Missouri, but her hearing was within the normal range.

On December 19, 2003, Taylor's IEP team convened to review and revise her IEP. Taylor still did not have a diagnosed hearing impairment at the time. The IEP team convened again on April 2, 2004, to discuss extended school year services. At that time, Taylor's father gave no indication that he was planning to reject the IEP proposed for Taylor or move her to a different school.

During the summer of 2004, Taylor attended extended school year services at the District's early childhood center where she received some services from Wray Ann Williams, a District paraprofessional. At some point, Williams became concerned about Taylor's hearing. She discussed the situation with Taylor's father who seemed frustrated because previous hearing tests had shown no problems. Nevertheless, Taylor's parents had her hearing tested again and she was first diagnosed with a hearing loss on July 12, 2004. The hearing loss was confirmed by St. Louis Children's Hospital on July 14, 2004, and Taylor was fitted with a hearing aide in her right ear. During the second evaluation, the audiologist at the hospital provided the family with information about several private

schools, including the Moog Center for Deaf Education ("Moog") in St. Louis County, Missouri. After Taylor's hearing loss was diagnosed, the family scrambled to gather information about their options. Staff at Moog told them that Taylor needed to be in a full-time self-contained program for deaf oral education. Thus, the parents began looking at private schools in St. Louis and considering whether to break up the family.

Meanwhile, Taylor returned to the extended school year services in the District wearing her new hearing aide. Her father informed Williams about Taylor's hearing loss and apologized for becoming angry when they had last spoken. Although they discussed what resources might be available, Taylor's father never indicated that he was considering transferring Taylor to a private school. On August 8, Taylor's mother told Williams that they were touring schools in St. Louis but they didn't yet know what they were going to do. Neither of Taylor's parents communicated her hearing loss diagnosis to anyone else at the District over the summer. Nor did they request a reevaluation or a modification to her IEP in response to the newly diagnosed hearing impairment. Taylor's parents did not ask the District what services it might have to offer or whether it might be willing to contract with Moog or any other school because they did not believe that it was necessary to inform the District of the options they were exploring.

On August 13, 2004, Taylor's parents had her cognitive ability assessed at Moog. They did not notify the District of the evaluation. When the District's school began that month, Christy Smith, Taylor's early childhood special education teacher, was informed of Taylor's hearing loss and anticipated that Taylor would return to her early childhood

5

program as discussed in the April 2004 IEP meeting. On August 18, 2004, Smith telephoned the parents' home to schedule a date to enroll Taylor. She was informed by the family's housekeeper that Taylor would not be returning to the District, but would be going to St. Louis to attend school. Taylor's parents never returned Smith's call regarding enrollment.

On August 19, 2004, Taylor's mother signed a release of records form to give the District permission to release records to "2 different schools" with respect to a possible move and transfer. When she picked up the records, she informed a District staff member that the family was considering two different schools for Taylor; however, she did not specifically mention Moog or state that she and Taylor's father were expecting the District to pay for either of the two schools under consideration. As of August 19, 2004, the District had not been provided with any information to support changes in Taylor's IEP. Further, if Taylor was no longer living in the District (which was unknown at the time), the District would not have been required to conduct a reevaluation or convene her team.

On August 26, 2004, Taylor's parents enrolled her at Moog. Although they had previously received copies of the IDEA procedural safeguards from the District and were capable of reading and understanding those safeguards, they did not inform the District that they were going to place Taylor at Moog and did not, prior to placing Taylor at Moog, seek reimbursement for that placement.

6

Case 2:06-cv-04254-NKL    Document 28    Filed 03/20/07    Page 6 of 17

At the time of her enrollment at Moog, Taylor and her father began residing in St. Louis, Missouri, during the school week. On Monday, August 30, 2004, Taylor's father informed Dr. Amy Jackson, the District's Special Education Director, that Taylor was attending Moog and asked her if the District would contract with Moog. Dr. Jackson informed him that Taylor's IEP team would have to convene to consider his request for a change of placement and asked if he would like the District to schedule an IEP meeting. Dr. Jackson did not indicate in any way that the District had agreed to change Taylor's placement or to pay for Moog.

On September 9, 2004, Dr. Jackson sent Taylor's parents a notification to their Poplar Bluff address for an IEP meeting for September 24, 2004. The notification indicated that the purpose of the meeting was to consider a parent request for a change of placement, to develop an IEP if necessary, to review any existing data and to discuss a reevaluation. At that time, Taylor was still not identified under the IDEA as a hearing impaired child and the District had no information concerning the nature and extent of Taylor's hearing loss. Taylor's IEP team met on or about September 24, 2004, to consider the Parents' request for a change of placement to Moog. Neither of Taylor's parents attended and, as a result, the team adjourned. Taylor's father then provided Dr. Jackson with his new St. Louis address and requested that future meeting notifications be sent there. On October 11, 2004, Taylor's IEP team reconvened and proposed a reevaluation of Taylor. Her father agreed that a reevaluation was necessary and provided consent. He also requested an immediate change of placement to Moog. Because Taylor

7

was not then identified educationally as a student with a hearing impairment and because the District did not believe, at that time, that Moog was her least restrictive environment, the District refused the request for a change in placement. The District offered to provide services to Taylor. Taylor's parents did not file for an IDEA due process hearing at that time in response to the District's refusal to change Taylor's placement.

Later that month, Taylor suffered another loss of hearing in her right ear. In response, Moog contacted a physician who determined that Taylor was a candidate for a cochlear implant. During October and November 2004, the District conducted its reevaluation and Taylor wore her hearing aid during the testing. On November 22, 2004, Taylor's multidisciplinary team convened to discuss the reevaluation results and to develop a new IEP for Taylor. At that time, Taylor had not received her cochlear implant. After a review of all testing, the team agreed that Taylor's new IDEA educational diagnosis should include hearing impaired/deafness, sound system disorder, and language impaired. The team developed a new IEP, the first since learning of her diagnosed hearing loss. That IEP was based on the information available to the team in November. Because Taylor never returned to the District, the District never had an opportunity to implement the November IEP or any other IEP developed for Taylor subsequent to her identified hearing loss. At the conclusion of the meeting, Taylor's father told the team that he disagreed with the proposed placement and asked about his options. He was informed about his rights pursuant to the IDEA procedural safeguards previously provided to him.

Although the team members were aware that Taylor would be receiving a cochlear implant, she had not yet had that surgery as of November 2004. Because the team did not know what Taylor's auditory discrimination or speech perception skills would be after the implant, the team agreed to reconvene after Taylor's surgery to review and, if necessary, revise the IEP.

On November 23, 2004, Taylor's father filed for an IDEA due process hearing by writing to the Missouri Department of Elementary and Secondary Education. In that request, he stated that the nature of the problem was "inappropriate evaluation of a deaf child and improper/substandard educational plan" and he proposed a change of services to Moog as the resolution. He did not indicate that he would be seeking reimbursement for his unilateral placement of Taylor at Moog. On December 2, 2004, the District sent him a copy of the November 2004 IEP and a written notice of action refusing the requested change of placement to Moog. In addition, the District sent a notice of action refusing to revise Taylor's IEP to address her cochlear implant needs since the request was premature. That notice indicated that the team would reconvene after her implant surgery to address what revisions, if any, might be necessary. On December 3, 2004, the Missouri Department of Elementary and Secondary Education ("DESE") appointed a three-member panel to hear the family's due process complaint.

Taylor's father requested an extension of the IDEA statutory timeline on December 20, 2004, due to Taylor's pending cochlear implant surgery. The panel chair granted that request and extended the time for decision to February 6, 2005. Taylor had

9

cochlear implant surgery on January 10, 2005. On January 11, 2005, Taylor's father corresponded with the District and requested an IEP meeting. The IEP team convened on January 24, 2005 to review and, if necessary, revise Taylor's IEP. At that time, Taylor's cochlear implant, although surgically implanted, had not been initially activated or turned on. The team, therefore, discussed the possible need to revise Taylor's auditory goals after her initial mapping but agreed that it was premature to revise the IEP until that occurred.

On March 2, 2005, Taylor's IEP team again convened. At the meeting, the team updated and developed a new IEP for Taylor based on the information that Moog staff was willing to share. The District has never had the opportunity to implement that IEP for Taylor. Taylor's parents never filed an IDEA due process hearing request with respect to that IEP. On March 4, 2005, Taylor's father requested an additional sixty day extension of the statutory timeline to secure legal counsel. On March 30, 2005, he informed the panel that the law firm of Whitted & Cleary would be representing him, although no entry of appearance had yet been received. On May 5, 2005, attorney Neal Takiff of Whitted & Cleary corresponded with the panel chair and requested an additional extension of the statutory timeline through August 31, 2005, indicating that he was available for a hearing in September 2005; however, no hearing took place until the following spring.

On December 30, 2005, the Parents' legal counsel filed a statement of issues to be addressed at a due process hearing. The issues, as raised by Mr. Takiff prior to hearing, were as follows:

> (a) Whether the District made numerous procedural errors and acted in bad faith when describing proposed educational placement to the parents, which amount to a violation of Taylor's free and appropriate public education;
>
> (b) Whether the IEP and educational placement proposed for Taylor for the 2004-05 school year is reasonably calculated to provide her with a free appropriate public education;
>
> (c) Whether the IEP and educational placement proposed for Taylor for the 2005-06 school year is reasonably calculated to provide her with [Free Appropriate Public Education ("FAPE")]; and
>
> (d) Whether Taylor's placement at the Moog Oral Center for Deafness is reasonably calculated to provide her with FAPE and meet her complex special education needs.

On January 1, 2006, the District's attorney rejected a settlement proposal and informed Takiff that, because the family failed to provide the requisite advance statutory notice before transferring her to Moog, the District believed that the due process claim was frivolous. The District also informed Takiff that it would consider seeking prevailing party fees against his firm and/or his clients if the matter went to hearing and the District prevailed.

On January 10, 2006, the District filed its Motion to Dismiss with the hearing panel in response to the Parents' December 2005 Statement of Issues. It argued that the Parents' case should be dismissed because of the Parents' failure to inform the District of their unilateral placement of Taylor at Moog and their intent to seek reimbursement as

11

required by the IDEA procedural safeguards provided to the Parents on multiple occasions. A due process hearing was held on January 23-27 and March 27-29, 2006. On March 6, 2006, the District's attorney again rejected a settlement demand proposed by the parents, indicating that the District believed the case to be frivolous and would, if it prevailed at hearing, pursue attorneys' fees.

On September 18, 2006, the three-member due process hearing panel issued a 2-1 decision in favor of the District. The District has incurred in excess of $35,000 in attorneys' fees and costs up to and including the due process hearing.

## II. Discussion

### A. Motion to Dismiss

The District asserts a counterclaim against Taylor's Parents and their former counsel for attorney's fees incurred litigating their due process complaint and this subsequent civil action appealing the administrative decision. A counterclaim should not be dismissed for failure to state a claim unless it appears beyond doubt that the [counterclaimant] can prove no set of facts to warrant a grant of relief." *Knieriem v. Group Health Plan, Inc*., 434 F.3d 1058, 1060 (8th Cir. 2006).

The IDEA provides that:

In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing State educational agency or local educational agency against the attorney of a parent, or against the parent, if the parent's complaint or subsequent cause of action was presented for any improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation.

12

20 U.S.C. § 1415(i)(3)(B)(i)(III). The term "action or proceeding" as used in Section 1415 includes due process hearings and appeals. *Megan C. v. Independent Sch. Dist. No. 625*, 57 F. Supp. 2d 776, 782 (D. Minn. 1999) ("an IDEA impartial due process hearing initiated pursuant to 20 U.S.C. § 1415(f) . . . is an 'action or proceeding' brought under § 1415 and [prevailing parties] are thus entitled to attorneys' fees"); *Barlow-Gresham Union High School Dist. No. 2 v. Mitchell*, 940 F.2d 1280, 1284 (9th Cir. 1991); *Mitten v. Muscogee County School Dist.*, 877 F.2d 932, 935 (11th Cir. 1989).

Taylor's Parents argue that the counterclaim against them must be dismissed because the District has not alleged any facts supporting the second prong of the inquiry laid out in Section 1415(i)(3), namely that their request for a due process hearing or their appeal of that administrative decision was and continues to be made for an improper purpose. Although the Counterclaim explicitly alleges improper motive, the Parents argue that "a well-pleaded complaint must contain something more than mere conclusory statements that are unsupported by specific facts." *Kaylor v. Fields*, 661 F.2d 1177, 1183 (8th Cir. 1981).

The District's Counterclaim alleges that Taylor's parents failed to notify the district of Taylor's hearing loss diagnosis; failed to request a reevaluation of her IEP in view of that diagnosis; unilaterally enrolled her at Moog without notifying the district and without requesting reimbursement for her placement there in accordance with the procedural safeguards provided in the IDEA; caused repeated delays in of the due process hearing; and ignored repeated warnings from the District's lawyers that the District

13

viewed the complaint as frivolous because the Parents had failed to comply with IDEA's requirements for alternative placement. After the due process hearing, the three person panel appointed by the Department of Education noted in its decision that there was no issue "of the adequacy of [Taylor's] education or the [the District]'s compliance with the IDEA in that regard prior to the onset of the 2004-05 school year." Due Process Decision at 3. The panel further noted that the District committed no procedural errors in not reevaluating Taylor over the summer of 2004 after her father told Williams of her hearing loss, and that any inadequacy of Taylor's IEP at the beginning of the 2004-05 school year was caused by the Parents failure to notify the District of Taylor's hearing loss and the need for reevaluation. Finally, the panel noted that the Parents' failure to give advance notice to the District of their intent to transfer Taylor to Moog "deprived the District from the ability to develop an alternative IEP," and precluded reimbursement.

> The IDEA provides that
>
> If the parents of a child with a disability, who previously received special education and related services under the authority of a public agency, enroll the child in a private elementary school or secondary school without the consent of or referral by the public agency, a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made a free appropriate public education available to the child in a timely manner prior to that enrollment.

20 U.S.C. § 1412(a)(10(C)(ii). However, the reimbursement "may be reduced or denied," with immaterial exceptions, if

> (aa) at the most recent IEP meeting that the parents attended prior to removal of the child from the public school, the parents did not inform the IEP Team that they were rejecting the placement proposed by the public

14

> agency to provide a free appropriate public education to their child, including stating their concerns and their intent to enroll their child in a private school at public expense; or
>
> (bb) 10 business days (including any holidays that occur on a business day) prior to the removal of the child from the public school, the parents did not give written notice to the public agency of the information described in item (aa);

*Id.* § 1412(a)(10(C)(iii). The Parents note that the permissive language "may be reduced or denied" is not mandatory and thus does not mean that their failure to give notice necessarily renders their continued litigation frivolous for an improper purpose. *See, e.g., Nein v. Greater Clark County Sch. Corp.*, 95 F. Supp. 2d 961, 984 (D. Ind. 2000) (ordering district to reimburse parents despite their failure to give advance notice or transfer to private school).

At this early stage in the litigation, the Court cannot say that the District will be unable to prove any set of facts demonstrating an improper purpose on the part of Taylor's parents. This fact-intensive inquiry is more properly resolved at summary judgment. The Motion to Dismiss the Counterclaim against the Parents is therefore denied.

### B. Motion to Join

The District's Counterclaim is also brought against Neal Takiff and Jennifer Hansen, counsel to Taylor's Parents during the due process hearing. The IDEA also provides for prevailing party attorneys fees to be awarded directly against parents' attorneys in certain cases. *See* 20 U.S.C. § 1415(i)(3)(B)(i)(II)("the court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing

15

party . . . against the attorney of a parent who files a complaint or subsequent cause of action that is frivolous, unreasonable, or without foundation, or against the attorney of a parent who continued to litigate after the litigation clearly became frivolous, unreasonable, or without foundation"). The Parents move to dismiss the Counterclaim against their former attorneys because the attorneys are not parties to the suit.

The District acknowledges that Neal Takiff and Jennifer Hansen were not originally parties to the suit, but they were named as Counterclaim Defendants in the District's answer. Although the District has not yet served Takiff and Hansen with the Counterclaim, its has moved for the Court's leave to join them as counterclaim defendants under Federal Rules of Civil Procedure 13(h) and 20.[1] Taylor's parents filed no response to the District's joinder motion and their time to do so has now expired.

Under the Federal Rules of Civil Procedure, "[p]ersons other than those made parties to the original action may be made parties to a counterclaim or cross-claim in accordance with the provisions of Rules 19 and 20." Fed. R. Civ. P. 13(h). Rule 20 provides in pertinent part, "All persons . . . may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or rising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20. The relief sought against Takiff and Hansen is prevailing

---

[1] The District has also moved to join Takiff and Hansen as necessary and indispensable parties under Rule 19. Because the Court concludes that their joinder is permissive under Rule 20(a), it need not address joinder under Rule 19.

16

party attorney's fees which arise from the same transaction or occurrence for which the District seeks attorney's fees against the Parents. Whether the Parents' pursuit of the due process hearing was frivolous or for an improper purpose is a common issue of fact bearing on the liability of both sets of counterclaim defendants. Permissive joinder of the former attorneys is therefore available under Rule 20. *See Waterloov Gutter Protection Sys. Co. v. Absolute Gutter Protection*, L.L.C., 64 F. Supp. 2d 398, 407 (D.N.J. 1999) (allowing joinder of plaintiff's former attorneys as counter-claim defendants).

### III. Conclusion

Accordingly, it is hereby

ORDERED that Plaintiffs' Motion to Dismiss the Counterclaim [Doc. # 8] is DENIED. It is further

ORDERED that the District's Motion to Join Takiff and Hansen as Counterclaim Defendants [Doc. # 16] is GRANTED. The District has twenty days from the date of this Order to effect service on Takiff and Hansen or the Counterclaim against them will be dismissed for failure to prosecute.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: March 20, 2007
Jefferson City, Missouri